CASE 51.—ACTION BY HIRAM BLOW & CO. AGAINST THE LOUISVILLE & ATLANTIC RAILROAD COMPANY. —January 25, 1910.

## Louisville & Atlantic R. R. Co. v. Hiram Blow & Co.

Appeal from Madison Circuit Court.

J. M. BENTON, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

Carriers—Freight—Wrongful Delivery—Actions—Amount Recoverable—Credits.—Where two of three cars consigned to plaintiff were delivered to another, who subsequently became bankrupt, and plaintiff proved his claim against the bankrupt's estate for the value of all three cars, believing that they were all delivered to him, and was allowed a part of the total value of all the cars, in a subsequent action against the railroad company for the value of the two cars wrongfully delivered, the full amount recovered from the bankrupt's estate will not be allowed as a credit against plaintiff's claim, but only the pro rata payment on the two cars wrongfully delivered; the railroad company having no interest in the amount allowed by mistake for the third car.

WALLACE & HARRIS, BENJAMIN D. WARFIELD AND J. TEVIS COBB for appellant.

A. R. BURNAM & SON AND BODLEY & BASKIN for appellee.

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

The appellees, Hiram Blow & Co., were the owners of, and had consigned to them at Richmond, Ky., three car loads of whiskey barrel staves of the value of $1,495.63. These cars were hauled to Richmond by the appellant, the Louisville & Atlantic Railroad Company, and two of them were wrongfully delivered to the Hume Cooperage Company, of Richmond. The third car was held by appellant, and for some reason unexplained in the record was not received by Hiram Blow & Co. until some time after the conversion of the other two cars. Shortly after receiving the two cars of staves above referred to, the Hume Cooperage Company became insolvent and went into bankruptcy. The appellees, Hiram Blow & Co., thereupon proved a claim against the bankrupt for the sum of $1,495.63, being the full value of all three cars of staves, although only two had been delivered to and received by the bankrupt. Presumably this was done because Hiram Blow & Co. thought at the time that all of the cars had been delivered to the Hume Cooperage Company. The estate of the bankrupt corporation paid 73 1-3 per cent. of the total amount of claims proved, and Hiram Blow & Co. therefore received 73 1-3 per cent. on the total value of the three cars, when, as a matter of fact, they were entitled to only 73 1-3 per cent. of the aggregate value of two cars.

Afterwards the appellees instituted this action against the Louisville & Atlantic Railroad Company for the value of the two cars of staves which it had wrongfully delivered to the Hume Cooperage Company, crediting the account by the amount received

from the bankrupt estate as their pro rata on the two cars wrongfully delivered as aforesaid. The appellant admits its liability for the wrongful delivery of the two cars of staves, but insists that the account should be credited by the full amount which appellees received from the bankrupt estate; and this is the real question arising upon the record. For appellees, it is insisted that the dividend paid by the assignee in bankruptcy on the car which was not delivered to the bankrupt, and for which the bankrupt was not at all liable, was money paid to them by mistake, in which the railroad corporation has no interest; that all the railroad corporation is entitled to receive credit for is the pro rata paid them on the two cars which it wrongfully delivered to the Hume Cooperage Company. The circuit judge accepted the view of appellees, and allowed appellant credit by the dividend received on the value of the two cars which had been wrongfully delivered, and gave a judgment against appellant for the difference between that sum and the value of the two cars wrongfully delivered.

It seems to us that this judgment is correct. The matter in dispute between the railroad and Hiram Blow & Co. was the wrongful delivery of the two cars received by the bankrupt. Whether the appellees put in a claim for a third car or for five other cars which the bankrupt had not received was entirely immaterial to the railroad company. The fact that Hiram Blow & Co., either by mistake or fraud, received from the bankrupt's estate more money than they were entitled to, does not concern the appellant. It may be that by proper proceedings Hiram Blow & Co. can yet be made to pay back to the bankrupt's estate for the benefit of the other creditors the money they wrongfully obtained. If this were done, where would

be the right of appellant to a credit for this money? Suppose, for example, we should accept the view of appellant, and credit its claim by the money wrongfully received by Hiram Blow & Co., and afterwards the latter were required to pay it back to the bankrupt's estate, as perhaps might rightfully be done, then, clearly, Hiram Blow & Co. would lose on an admittedly just claim against the railroad corporation, the sum so paid back by them to the bankrupt's estate. It seems to us clear that the fact that Hiram Blow & Co. received money they were not entitled to does not concern the appellant. The latter wrongfully delivered two car loads of staves belonging to appellee to the Hume Cooperage Company. For the value of these staves it admits it is liable. Rightfully Hiram Blow & Co. could only have proved up a claim against the bankrupt's estate for the two cars which were actually delivered. The dividend they received on these two cars was justly credited on their claim against the railroad for the wrongful delivery, and when the railroad received this credit it received all to which it was entitled. In any other sums Hiram Blow & Co. may have wrongfully received from the bankrupt's estate the railroad company has no interest. The legal rights of the parties to this litigation must be settled according to the facts involved in the actual transaction which took place; extraneous facts or circumstances cannot be introduced into the case to aid either party. The wrongful act of Hiram Blow & Co., in proving up a false claim for a third car, has no legitimate connection with this case; that fact is no more connected with the real issue here than if Hiram Blow & Co. had stolen a sum of money from the bankrupt's estate pending the litigation; and the railroad corporation

has no more right to have the amount of money
which Hiram Blow & Co. wrongfully obtained from
the bankrupt's estate, either by fraud or mistake, cred-
ited upon the rightful claim against it, than it would
have had to have credited money stolen by that com-
pany from the bankrupt's estate. In each case
Hiram Blow & Co. would be liable to the bankrupt's
estate for the amount so wrongfully obtained, and,
this being true, the railroad corporation cannot have
a lawful right to be credited by the sums obtained.
Two different persons cannot have a separate legal
right to the same thing at the same time. If the
bankrupt's estate has had a right all the time since
the wrong of Hiram Blow & Co. to recover back this
money, then it cannot be true that the railroad corpo-
ration was also entitled to it; in other words, the
railroad corporation is entitled only to be credited by
such sums as Hiram Blow & Co. received and had a
legitimate title to.

The two cases cited by appellant to support its con-
tention are not apposite to the question we have here,
and, when properly analyzed and understood, they
are rather against than for the principle insisted up-
on by it. In Jelletts v. St. Paul, M. & M. Ry. Co.,
30 Minn. 265, 15 N. W. 237, the plaintiff sued the
railroad corporation for the value of a car load of
corn which it had wrongfully delivered to one Webb.
The defendant railroad corporation, in its answer,
alleged that, after the wrongful conversion of the
car load of corn by Webb, he (Webb) had paid the
owner, Jelletts, the full value of the corn wrongfully
converted by him. This allegation was stricken out of
the answer by the trial court. The judgment was re-
versed by the Supreme Court of Minnesota for this
error. Clearly that case does not support the conten-

tion of appellant here.   All that it holds is that the railroad corporation, when sued for the wrongful delivery of the corn, was entitled to show that the person to whom it was delivered had paid to the owner its full value.   Of course, the owner could not recover the full value of the corn, first from the party to whom the railroad wrongfully delivered it, and then from the railroad in addition.   The case cited is authority only for the railroad's right to be credited by the amount Hiram Blow & Co. received from the bankrupt's estate for the two cars of staves.   If the bankrupt's estate had paid all claims against it in full, then where would have been the interest of the railroad corporation in the amount wrongfully paid to Hiram Blow & Co. on the third car?   In Stearns et al. v. Grand Trunk Ry Co., 148 Mich. 271, 111 N. W. 769, a railroad corporation had wrongfully delivered a car of lumber to Scranton & Co.   The owners of the car of lumber, Andrews & Stearns, sued the railroad on an unpaid balance due them for the lumber.   The railroad offered to show that the lumber was of such poor quality that it was not worth the amount sued for.   The car wrongfully delivered was one of four cars, and the railroad offered to prove that Andrews & Stearns had been paid by Scranton & Co. in full for the lumber, and there was, therefore, no balance due them.   The trial court excluded this testimony; but the Supreme Court of Michigan reversed the judgment and held, very correctly, we think, that Andrews & Stearns could only recover the value of their interest in the car wrongfully converted, and if they had been paid all that was coming to them, before the conversion they had no cause of action against the railroad.   This case in principle is the same as the other case cited.   In both it was

held that, where a railroad wrongfully delivers merchandise, the owner of the property can collect its full value once. If he collects the whole value from the party to whom the railroad wrongfully delivered it, then he cannot also recover the whole value from the carrier. If he collects only a part from the person to whom the property was wrongfully delivered, he has a cause of action against the carrier for the unpaid balance, but no more.

Judgment affirmed.